UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLIOTT PADGETT,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>COMMUNITY EDUCATION CENTERS,<br>and RONALD PHILLIPS,<br><br>　　　　　　　Defendants. | CIVIL ACTION<br><br>No. 11-1654 |

February 27, 2012

## MEMORANDUM

Three motions are now pending before the court in this matter: defendant Ronald Phillips's Motion to Dismiss Counts I and II of Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6) (Docket No. 9); defendant Community Education Centers' Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6) (Docket No. 10); and defendants' Joint Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c) or Alternatively 12(b)(6) (Docket No. 17). For the reasons that follow, the Complaint will be dismissed without prejudice.

### I. Background

**A.　Factual Allegations**

The following narrative is drawn from the plaintiff's Complaint, filed on March 8, 2011 (Docket No. 1). In evaluating a motion to dismiss for failure to state a claim, this

court must "accept the complaint's allegations as true, [and] read those allegations in the light most favorable to the plaintiff." *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

On February 5, 2010, plaintiff Elliott Padgett was incarcerated at the George W. Hill Correctional Facility ("the prison") in Delaware County, Pennsylvania. Upon entering the prison, Padgett was given a medical assessment by employees of defendant Community Education Centers ("CEC"), a private entity hired by the Commonwealth of Pennsylvania to manage the prison. Padgett complained during this assessment of "dizziness, lightheadedness, weakness, and shortness of breath." He had recently been admitted for five days at Temple University Hospital.

Padgett's stay at the prison in the following months involved a series of complaints to the medical staff, ultimately culminating in surgery for bowel cancer. On February 14, 2010, Padgett complained during a sick call of "back pain that had lasted over a week and pain in his lower right side." He was seen two days later by Dr. Carl Peirce, a CEC physician, to whom he complained of "chest pain, shortness of breath, palpitations, headache, dizziness and weight loss." Dr. Peirce prescribed a blood pressure medication and ordered that Padgett's blood pressure be monitored until March 1, 2010.

On February 23, 2010, CEC medical staff ordered laboratory tests of Padgett's blood. Those tests were not performed until March 1, 2010. The lab work indicated that Padgett's blood contained "below average levels of hemoglobin, hematocrit and red blood

cells." CEC personnel took no further steps at the time to inquire into Padgett's health.

On March 14, 2010, Padgett complained to CEC staff members that "he felt cold and could not sleep." No action was taken, except to monitor Padgett's vital signs. His vitals signs were also evaluated on March 16, at which point he was instructed to return to in four weeks.[1] He returned as directed, his vitals signs were again evaluated, and he was told to return in six weeks. When Padgett was next seen on May 18, he was treated by defendant Dr. Ronald Phillips, the medical director of CEC. Padgett complained to Phillips of shortness of breath. Phillips ordered more blood tests and directed Padgett to return in sixty days.

On June 10, 2010, Padgett told a nurse on CEC's staff that he was experiencing difficulty breathing during exertion. The nurse took his vital signs and told him to avoid exertion, but she did not report the complaint to a doctor. Later that month, on June 24, Padgett was again directed to return in four weeks.

On July 16, 2010, Padgett lost consciousness and struck his head. A CEC medical staff member gave him medication for seizures and directed him to return for further treatment in two weeks. As of that date, the lab tests ordered on May 18 had not been

---

[1]The Complaint states that Padgett was directed to return "to the medical clinic." Compl. ¶ 22. Presumably, Padgett was directed to return to a clinic where CEC provided medical care within the prison. Padgett also alleges that the care provided to him on May 18, described *infra*, was rendered at CEC's "Chronic Disease Clinic." Compl. ¶ 25. Again, presumably this clinic was located at the prison. The Complaint does not make clear whether this was the same clinic as referenced earlier.

performed. Phillips had made no follow-up effort to ensure that the tests were performed. Four days later, on July 20, Padgett suffered a seizure. He was again seen by Phillips, to whom he reported that he "had been vomiting and had experienced dizziness for the preceding two months." Phillips ordered a CT scan and further laboratory tests.

Padgett was next seen a week later, on July 27, 2010, by Dr. Peirce. During the examination, Padgett told Peirce that he was experiencing feelings "of dizziness with weakness, lightheadedness and gross pallor." The lab tests ordered on July 20 (by Phillips) had not been performed as of July 27. Padgett collapsed that evening. After his collapse, the lab tests were finally performed. The testing revealed "dangerously low levels of hemoglobin, hematocrit and red blood cells."

Padgett was taken that same day, July 27, 2010, to Riddle Memorial Hospital for "GI bleed, anemia, chest pain, syncope and collapse and hypertension." The medical staff at the hospital gave Padgett a blood transfusion, ordered further blood tests to be taken by August 4, and scheduled an enteroscopy to examine Padgett's small intestine. The testing ordered by the hospital produced "severely abnormal" results, which the hospital staff communicated on August 16 to CEC staff at the prison (to which Padgett had returned). As a result of this communication, Padgett was admitted to Temple University Hospital on August 18, though he was discharged back to the prison on August 21.

Ultimately, Padgett underwent a small bowel enteroscopy at Temple University Hospital on September 2, 2010. The procedure revealed "a soft mass with evidence of

bleeding showing lymphangioma (cancer of the bowel)." Padgett was admitted to the Temple University Cancer Center on October 15, with "hypertension, hypoxic brain injury, worsening anemia, [and] shortness of breath." On November 12, he underwent surgery to remove the bowel cancer.

**B.    Prior Proceedings**

On March 8, 2011, Padgett brought the present Complaint against CEC and Phillips. The Complaint asserts three causes of action. First, the Complaint alleges that CEC and Phillips were deliberately indifferent to Padgett's serious medical needs at the prison, in violation of Padgett's rights under the Eighth Amendment of the U.S. Constitution. This count is brought pursuant to 42 U.S.C. § 1983. Second, the Complaint alleges that both defendants violated Padgett's right to be free of unnecessary pain and suffering, under Article 1, § 13, of the Pennsylvania Constitution. Third, the Complaint alleges that both defendants were professionally negligent, in that the care provided to Padgett "fell far below medically acceptable standards and deviated from accepted medical practice." By way of relief, the Complaint requests $150,000 and attorney fees.

Phillips moved to dismiss the first two counts of the Complaint on April 11, 2011 (Docket No. 9). CEC moved to dismiss those same counts on April 12, 2011 (Docket No. 10). Padgett responded in opposition to the two motions to dismiss on, respectively, April 19 and April 20, 2011 (Docket Nos. 11, 12).

On June 21, 2011, Phillips and CEC filed a joint motion for judgment on the

pleadings or for dismissal of the third count of the Complaint, which alleges professional negligence (Docket No. 17). Padgett has not filed any response to the motion.

Finally, on February 14, 2012, the court was apprised that all parties had jointly stipulated to the dismissal with prejudice of all claims against defendant Phillips (Docket No. 24). The stipulated dismissal was approved by endorsement on February 16, 2012 (Docket No. 25).

## II. Jurisdiction and Venue

This court has jurisdiction over the controversy because the first count of the complaint raises a federal question; the remaining state-law claims may be heard in supplemental jurisdiction. 28 U.S.C. §§ 1331, 1367. Venue is proper in this court because the prison is located in the Eastern District of Pennsylvania, and thus a substantial portion of the events alleged to give rise to the claim occurred in this judicial district. *Id.* § 1391(b)(2).

## III. Discussion

A.    **Phillips's Pending Motions**

By stipulation of the parties and with the approval of the court, all claims against defendant Ronald Phillips have now been dismissed with prejudice. Accordingly, Phillips's pending motion to dismiss the first and second counts of the Complaint is now moot and will be dismissed.

B.  **CEC's Pending Motions**

1.  **Eighth Amendment Violation**

To state an Eighth Amendment claim in this context, the plaintiff must allege facts that, if assumed to be true, plausibly show that the plaintiff had a serious medical need and that the defendant was deliberately indifferent to that need.[2]  *See, e.g.*, *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citing *Estelle v. Gamble*, 429 U.S. 97, 102-04 (1976)).  Deliberate indifference requires a subjectively culpable state of mind: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

But there is an additional hurdle faced by the plaintiff in this case, one which the parties have overlooked but which the court may raise *sua sponte*.  *See, e.g.*, *Hanenberg v. Borough of Bath*, Civ. No. 94-1929, 1994 WL 646112, at *3 (E.D. Pa. Nov. 16, 1994).

---

[2] The Eighth Amendment (via incorporation into the guarantees of the Fourteenth Amendment) constrains the conduct of state officials towards convicted prisoners.  As CEC points out, the Complaint does not make clear whether Padgett was incarcerated as a convicted prisoner or as a pre-trial detainee.  The rights of a pre-trial detainee are analyzed directly under the Fourteenth Amendment.  The constitutional mooring is not of any consequence here, however, because the substantive standards are the same.  *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244-45 (1983).

7

Section 1983 confers a right of action only against state actors.  A private corporation such as CEC may sometimes be treated as a state actor if, for example, it is involved in the performance of governmental functions.  *See e.g.*, *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974).  In this case, CEC does not dispute that it was acting under color of state law when it provided medical care to the plaintiff at the prison.  But a plaintiff suing under § 1983 cannot rely on *respondeat superior* to hold an entity liable for the conduct of its employees.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978).  The plaintiff must instead demonstrate that the entity had a policy, practice, or custom that was causally related to his constitutional injury.  *See id.* at 694-95; *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (explaining"policy or custom" requirement); *Cephas v. George W. Hill Corr. Facility*, Civ. No. 09-6014, 2011 WL 2695311, at *2 (E.D. Pa. July 12, 2011) (applying "policy or custom" requirement to Eighth Amendment claim against private corporation providing medical services at state prison); *Henry v. Buskirk*, Civ. No. 08-1348, 2011 WL 767540, at *4 (E.D. Pa. Feb. 24, 2011) (same).

   No facts are alleged in the Complaint that suggest that CEC had a policy, practice, or custom causally related to the plaintiff's injury.  No individual arguably in a position to set the policy of CEC is identified in the Complaint except the director, Dr. Phillips, and all claims against Phillips have been dismissed with prejudice.  There is no mention of formal or informal custom by CEC regarding the provision of medical care, nor any allegation that such a custom was causally related to the plaintiff's injury.  It is apparent

8

that the Complaint, as currently pleaded, fails to state a claim upon which relief may be granted against CEC and therefore must be dismissed.

Dismissal of a complaint on grounds not argued by the parties is permissible but disfavored, because it deprives the plaintiff of notice and an opportunity to be heard on the issue. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 36-37 (1st Cir. 2001); *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988). To avoid any possible prejudice, the Complaint will be dismissed without prejudice to the filing of an amended complaint.

### 2. State Law Claims

CEC also argues that the second count of the Complaint should be dismissed, because Pennsylvania law does not recognize a private cause of action for violation of the state constitutional prohibition on cruel and unusual punishment, and that the third count of the Complaint must be dismissed, because the plaintiff has failed to comply with the state-law requirement that, in a professional liability action, the plaintiff submit a "certificate of merit" from an appropriately licensed professional within sixty days of filing the complaint. Pa. R. Civ. P. 1042.3.

The court will not pass on the merits of either argument. Having determined that the only federal cause of action in the Complaint must be dismissed for failure to state a claim, the court will decline to retain jurisdiction over the remaining two state law claims. 28 U.S.C. § 1367(c)(3). The state claims may be raised again in this court if the plaintiff elects to submit an amended complaint, or may be pursued in the state courts. Since the

court does not retain jurisdiction over the state claims, CEC's motion for judgment on the pleadings or to dismiss those claims is moot.